**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELLE GONZALEZ and** | : | **No. 3:09cv2271** |
| **JASON GONZALEZ,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS BUILT BUSES, INC.,** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court for disposition is the motion for summary judgment filed by Defendant Thomas Built Buses, Inc. in this strict product liability case. The parties have briefed their respective positions, and the motion is ripe for disposition.

## Background

Plaintiff Michelle Gonzalez (hereinafter "plaintiff")[1] was involved in an incident on or about November 27, 2007 that led to the instant lawsuit. During the time relevant to this case, Pocono Mountain School District employed plaintiff as a school bus driver. (Doc. 59, Def.'s Stmt. of Mat. Facts ¶ 2). On the day of the incident, plaintiff was operating a 2008 Saf-T-Liner C-2 Model school bus assembled and distributed by Defendant

---

[1]This case involves two plaintiffs, Michelle and Jason Gonzales. We will refer to Plaintiff Michelle Gonzalez as "plaintiff" because she is the lead plaintiff with the principal causes of action. Plaintiff Jason Gonzalez merely has a derivative loss of consortium claim.

Thomas Built Buses, Inc.  (Id. ¶ 6).

Plaintiff avers that, on the day in question, the engine of the bus lost power and shut down as she drove the bus in Mount Pocono, Pennsylvania on Route 423 approaching the intersection with Route 196. (Id. ¶¶ 28-29).  She alleges that when the bus lost power the brake system and steering wheel also stopped working.  (Id. ¶ 30).  Plaintiff restarted the engine and the steering resumed functioning.  (Id. ¶ 31).  As she approached the intersection, she applied the brakes, but they would not stop the bus.  (Id. ¶ 32).  She turned onto Route 196 and approximately ten (10) seconds later, the engine again lost power and shut off.  (Id. ¶ 34).  According to the plaintiff, the brakes locked up and the steering wheel shut down.  She had to pull the steering wheel very hard, and the bus eventually came to a stop approximately 400 feet farther along the road.  (Id. ¶¶ 35, 42).  As she pulled on the steering wheel, plaintiff heard a popping sound in her neck.  (Id. ¶ 37).  Plaintiff alleges that she suffered left shoulder injury and neck injuries from pulling on the unresponsive steering wheel.[2]

_____

[2]Plaintiff initially alleged the following injuries: herniated discs in her neck, left shoulder sprain and left arm injury, including radiculopathy. (Doc. 1, Compl. ¶ 30).  In her answer to the defendant's interrogatories, she identified the following injuries: a) Left clavicle fracture requiring surgery; b) C3-4 disc herniation, C5-6 disc protrusion; c) Aggravation of disc building at L4-5 and L5-S1; and d) Headaches.  (Doc. 59, Def. Stmt. Mat. Facts ¶ 61).  Her brief in opposition to the motion for summary judgment, however, narrows the injuries involved to neck and left shoulder injuries.  (Doc. 63, Pl.'s Br. at 13 n.3).

(Doc. 63, Pl.'s Br. at 13 n.3).

Based upon the incident, plaintiff filed a complaint that includes the following causes of action:[3] Count I, Negligence and Gross Negligence; Count III, Strict Liability (Design Defect, Manufacturing Defect and Insufficient Instructions/Warnings); Count V, Fraud, Concealment and Misrepresentation; and Count VII, Loss of Consortium on behalf of Jason Gonzalez. (Doc. 1, Compl.). Defendant Thomas Built Buses now moves for summary judgment on Counts I, III, V and VII.

Plaintiff does not challenge two portions of defendant's request for summary judgment. She does not challenge summary judgment with regard to Count V – fraud, concealment and misrepresentation; and the "failure to warn" portion of Count III – Strict Liability. Summary judgment will be granted to the defendant on these portions of plaintiff's complaint. We will now discuss the remaining portions of the complaint.

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. The plaintiffs are citizens of Long Pond, Pennsylvania and the defendant is a North Carolina corporation with a principal place of business in High Point, North Carolina. (Doc. 1, Compl.

---

[3]Originally, this case involved two defendants, Thomas Built Buses, Inc. and Daimler Truck North America, LLC. The parties stipulated to the dismissal of Daimler Truck North America, LLC. (Doc. 38). Thus, we have listed only the causes of action that remain in the action, those asserted against Thomas Built Buses, Inc.

¶¶ 2,4).  Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Standard of review**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party.  Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id.

4

Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

## Discussion

Defendant raises both procedural issues and substantive issues. We will address each separately.

## I. Procedural issues

Defendant first raises several procedural issues with regard to the evidence we properly may consider in ruling on its summary judgment motion. These issues can be broken into the following areas: 1) compliance with basic procedural rules; 2) proper support for plaintiff's counter-statement of facts and 3) plaintiff's expert report. We will address these issues *in seriatim* before ruling upon the substance of defendant's motion.

### A. Procedural Rules

Defendant claims that the papers plaintiff filed in opposition to the

motion for summary judgment are facially improper and plainly inadequate to defeat summary judgment. Defendant alleges plaintiff failed to comply with basic procedural rules rendering the motion for summary judgment unopposed. Defendant filed a statement of material facts with its motion for summary judgment. (Doc. 59). Plaintiff filed a response to the statement, (Doc. 62), but defendant contends that the response is inadequate. After a careful review, we disagree with the defendant.

Both Rule 56(c)(1)(A) of the FED. R. CIV. P. and L.R. 56.1 require plaintiff to identify facts and references to the record that dispute defendant's statement of facts. In the instant case, for the most part, plaintiff explicitly admits the facts that defendant has presented. However, plaintiff does deny several of defendant's facts. Defendant complains specifically regarding ten (10) responses. Those ten are the responses to defendant's statement of facts ¶¶ 15, 19, 26, 43, 45, 47-50. Plaintiff denies these alleged facts. (See Doc. 62, Pl.'s Ans. to Def.'s Stmt. of Mat. Facts). The reason for plaintiff's denial is presented by the plaintiff in its response. Generally, plaintiff asserts that several of these alleged facts are not supported by the record cited by the defendant; or that they are merely the conclusion of defendant's expert witness. (Id.) For purposes of this motion, we find these answers to be sufficient.

The case that defendant cites in support of its position is distinguishable. See Reed v. Harpster, No. 3:09cv1618, 2012 WL

2871797 (M.D. Pa. July 12, 2012).  In <u>Reed</u>, the *pro se* plaintiff, who was a state court prisoner, misnumbered his responses to the defendants' numbered paragraphs and failed to cite to, or submit, evidence to support the statements of his disagreement with defendants' properly supported statement of fact.  <u>Id.</u> *1, n1. The court thus deemed the defendants statement of facts as admitted.  <u>Id.</u>  Unlike in <u>Reed</u>, plaintiff has presented a paragraph by paragraph response to plaintiff's statement of material fact.  Plaintiff has properly numbered her paragraphs, and denies statements for which defendant provides no support, or which she claims are merely conclusions of defendant's expert.  <u>Reed</u> is thus very different from this case, and the court decides this issue against the defendant.

### B.  Counter-Statement of Facts

Next, defendant argues that the "counter-statement of facts" found in plaintiff's opposition brief is not properly supported by the record.  We will take this objection into consideration as we review the motion for summary judgment.  However, we will not treat defendant's motion as unopposed.  Plaintiff has filed an answer to the defendant's statement of material facts.  She has also filed a brief in opposition to the motion, and she has presented several exhibits, a report by Harold A. Schwartz, a forensic engineer, and a notice of hearing regarding plaintiff's workers' compensation hearing.  (<u>See</u> Docs. 63, 63-1 & Doc. 63-2).  Thus, it would be inappropriate to treat defendant's motion as unopposed.  That being

said, we will not consider any facts asserted by the plaintiff unless they are supported by the record.

## C. Plaintiff's expert witness report

Defendant also argues that the evidence that plaintiff does rely on, a report of its expert witness, is not proper evidence and should not be considered in ruling on the summary judgment motion. Defendant argues that the report is neither sworn nor subscribed to under the penalty of perjury as provided in 28 U.S.C. § 1746. We agree with defendant, and will not rely upon the report in ruling on this motion.

The law provides that a party who asserts that a fact is genuinely disputed at the summary judgment stage, must cite to specific portions of record, including depositions, affidavits or declarations, that support its position. Fed. R. Civ. P. 56(c)(1)(A). The Third Circuit has held that this rule requires expert reports to be sworn to by the expert witness. See Fowle v. C & C Cola, 868 F.2d 59, 67 (1989).

Fowle deals with allegations of employment discrimination. In opposing a motion for summary judgment, the plaintiff presented a document that he purported was a report of an alleged expert. Id. at 67. The district court assumed the admissibility of the report and ruled against plaintiff on the merits. Id. The Third Circuit Court of Appeals ruled against the plaintiff also, but refused to consider the expert report because the "substance of [the] report was not sworn to by the alleged expert." Id.

8

(Citing to Fed. R. Civ. P. 56(e) and Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n.17 (1970)). The court noted, however, "evidence should not be excluded on summary judgment on hypertechnical grounds, we are swayed in this case by the fact that defendants raised this issue in the district court, and plaintiff did nothing to correct the error before that court." Id.

As in Fowle, the defendant has raised the issue of the plaintiff's purported expert witness report not being sworn to or attached to an affidavit. A review of the report indicates that indeed it is not sworn to, not attached to an affidavit, and the expert's deposition is not presented. The plaintiff has done nothing to correct the error before this court since the defendant raised it in its reply brief on September 7, 2012. Accordingly, we will not consider the plaintiff's expert report in deciding the defendant's motion for summary judgment. See also, Jackson v. Egyptian Navigation Co., 222 F. Supp. 2d 700, 709 (E.D. Pa. 2002) (explaining that an unsworn expert report is not competent evidence to be considered at the summary judgment stage); Bocks v. CVS Pharm., Inc., No. 07-412, 2008 WL 3834266 at *3 (Aug. 14, 2008) (declining to consider at summary judgment stage an addendum to an expert report that was not supported by an affidavit or deposition).[4]

---

[4]Defendant also argues that the expert is not properly authenticated. Although we have decided to not rely upon the expert report, for purposes of completeness, we will address this issue also. Authentication of a

## II.  Substantive issues

With the procedural issues ruled upon, we proceed to consider the following three substantive issues raised by defendant: 1) Whether a question of fact exists with regard to the bus in question being substantially changed;  2) Whether plaintiff can establish that the bus caused injuries to plaintiff; and 3) Whether a ruling in plaintiff's workers' compensation case constitutes collateral estoppel on the issue of causation.  We will address these issues *in seriatim.*

### A.  Substantial change - foreseeability

On November 27, 2007, which was either the day of or the day before the incident, the bus was brought to the school campus for repairs. (Doc. 59, Def.'s Stmt of Mat. Facts ¶ 12).  The bus would not start, and a mechanic at the school garage found a broken electrical terminal.  (Doc. 57-8, Waltz Dep. at 9).  The terminal was attached to a wire running between the school bus's power distribution module and the engine control

---

document does not relate to its admissibility, but rather to its genuineness. See  Bouriez v. Carnegie Mellon Univ., No. A. 02-2104, 2005 WL 2106582 *5 (Aug. 26, 2005).   That is, authentication relates to whether the document is what the party offering it claims it to be.  The Federal Rules of Evidence provide that: "In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  FED. RULE EVID. 901(a). Evidence that supports authentication includes testimony of a witness with knowledge.  Id. at (b)(1).   Thus, any problem with authentication of the expert report would be dealt with simply by having the witness testify at trial.

module.  (Doc. 59, Def.'s Stmt. of Mat. Facts  ¶¶ 9, 13).   The mechanic tried to repair the broken terminal by cutting off part of the wire and attaching an aftermarket ring terminal to it.  (Id. ¶ 14).   Cutting the wire shortened it by one-half to three-quarters of an inch.  (Id. ¶ 16).  After the ring terminal and wire were attached to each other, the mechanic soldered the aftermarket ring terminal to the original terminal and bent or crimped it.  (Id. ¶ 17).

The bus was then provided to plaintiff for use.  She was told that a loose wire had been found by the mechanics and that the problem had been fixed.  (Id. ¶ 23).  While she was driving it, however, the bus again lost power causing the incident at issue.  (Id. ¶ 24).  After the incident, a school district mechanic saw that the soldered ring terminal had pulled apart from the original equipment terminal.  (Id. ¶ 25).

At the time of the repair, the mileage on the bus was approximately 5,000 miles, and it was covered by a warranty.  (Doc. 57-8, Waltz Dep. at 23-24).  The work performed on the bus was meant to be a temporary fix, and the School District had ordered an original equipment terminal for effecting a more permanent replacement of the broken terminal.  (Doc. 59, Def.'s Stmt of Mat. Facts ¶ 21).

Defendant seeks judgment on plaintiffs strict liability claim and negligence claim on the basis that the repairs made by the school district substantially changed the bus before the incident.

The parties agree that plaintiff's strict liability claim is governed by Section 402A of the Restatement (Second) of Torts, which provides as follows:

> (1) One who sells any product in a defective condition unreasonable dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if:
>
> > (a) the sellers engage in the business of selling such a product; and
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Thus, a seller who sells a product in an unreasonably dangerous defective condition is subject to liability for harm caused by the product. Liability against the seller cannot be found, however, where the product reaches the consumer in a condition of "substantial change." This exception applies where: 1) there has in fact been a substantial change; 2) which is not reasonably foreseen by the manufacturer; and 3 )where the modification is the superseding cause of the user's injury. Putt v. Yates-American Mach. Co., 722 A.2d 217, 220-221 (Pa. Super. Ct. 1998); Meeks v. APV Ltd., No. Civ.A. 00-4191, 2002 WL 32349781 at *1 (Feb. 5, 2002). Here, defendant alleges that "substantial change" occurred to the bus at issue, the change was not foreseeable, and the change was the superseding cause of the plaintiff's injury. Therefore, according to the defendant, it cannot be held liable. Plaintiff does not contest that a change

12

was made on the bus.[5]  Plaintiff does contest, however, whether the change was an unforeseeable substantial change and whether it was the superseding cause.

Defendant contends that it is not liable for the incident because the bus was substantially changed after it was out of defendant's control.  If the change that occurred was foreseeable, this defense is not appropriate. Defendant contends that forseeability is a question of law in this case for the court to decide.  Plaintiff argues that the matter of foreseeability is a question of fact for the jury to decide.  We agree with the plaintiff that the question of substantial change/foreseeability is for the jury to determine.

Under the law, foreseeability is generally a question of fact for the factfinder, in this case the jury.  The Pennsylvania Superior Court has explained as follows:  "Foreseeability is a question for the factfinder unless the inferences are so clear that a court can say as a matter of law that a reasonable manufacturer could not have foreseen the change."  Davis v. Berwind Corp., 640 A.2d 1289, 1297 (Pa. Super. Ct. 1994) (citing D'Antonia v. Hampton Grinding Wheel Co., 310 A.2d 307, 310 (Pa. Super. Ct. 1973)).   In the instant case, the inferences are not so clear that we can determine as a matter of law that a reasonable manufacturer could not have foreseen the change.

_____

[5]Plaintiff alleges that the repair was not a "substantial change" but we provide no separate analysis as to whether the change was substantial as such an analysis is very much interrelated with the issue of foreseeability.

For instance, it is agreed by the parties that the change at issue was shortening the subject wire and applying an aftermarket ring terminal. Nothing out of the ordinary is present in this change.   Moreover,  the mechanic who performed the change indicated that he crimped the new ring terminal after soldering it so that the wire mounted onto the terminal in the same manner as it had before its malfunction.  (Def. Ex. G, Waltz Dep. at 18).[6]  The change can be viewed as merely an attempt to put the product back in working order, the way it had been before the original equipment supplied by defendant broke.

These facts are distinguishable from the cases cited by the defendant where foreseeability was determined as a matter of law.   For example, defendant cites to Smith v. Hobart Mfg. Co., in which the manufacturer had included a safety guard on the meat grinder it furnished to the buyer.  Smith v. Hobart Mfg. Co., 302 F.2d 570 (3d Cir. 1962).  The buyer then removed the safety guard and one of its employees was injured using the grinder.  Id. at 572-73.  The court held that there was not sufficient evidence for a jury to conclude that the manufacturer would foresee that the buyer would remove the guard as such removal was illegal except for making immediate repairs or adjustments.  Id. at 574.  In the instant case, no law forbid the school district from making the temporary

_____

[6]The defendant disputes the meaning of the mechanic's testimony, which instead of indicating that summary judgment is appropriate, indicates that questions of fact exist for the jury to determine.

repair that it did.  Thus, Smith is not on point.

Defendant also cites to Spyer, Inc. v. Humble Oil & Refining Co., 403 F.2d 766 (3d Cir. 1975).  This case involved a gas pump.  Nine years and seven months after it was sold, a new type of hose was attached to it.  The new hose was capable of creating unusual pressure dynamics.  Id. at 771. The court found the addition of the new type of hose to be a substantial change to the gas pump as a matter of law.  Id.  Spyer quoted the United States Supreme Court as follows:  "'Events too remote to require reasonable prevision need not be anticipated.'"  Id. (quoting Brady v. Southern. Rwy. Co., 320 U.S. 476, 483 (1943))   Spyer is clearly different from the present case where a repair was made merely months after the product was sold.

In a third case cited by the defendant, involving a "press brake," seventeen years had passed since the manufacture of the product and the accident.  Hanlon v. Cyril Bath Co., 541 F.2d 343, 345 (3d Cir. 1975).  In that time, the owner of a press brake had replaced the electrical starter with a device that was significantly different and much more sensitive.  Id. In the present case, the change happened soon after the purchase of the product, it was merely a repair to put the product in working order.  A device was not replaced with a much more sensitive and significantly different device.  Thus, the question of substantial change/foreseeability is not as clear as it was in Hanlon.

15

Likewise, in Rooney v. Fed. Press Co., 751 F.2d 140 (3d Cir. 1984), also cited by the defendant, the court dealt with a press and the question of substantial change was more obvious than in the present case.  A year after the purchase of the machine the purchaser modified its controls which rendered safety features on the machine less effective.  Fourteen years after the purchase of the machine and thirteen years after the modification, an accident occurred.  Id. 142-43.  Once again, as in the other cases, the the machine had been altered, affecting the effectiveness of safety features.   Thus, this case is distinguishable.

Defendant does cite to a case that on its face appears similar to the instant case as it involves wiring on an automobile.  See Reese v. Ford Motor Co., Nos. 09-2948, 10-1181, 2011 WL 4572027 (E.D. Pa. Oct. 4, 2011).  In Reese, the plaintiffs purchased a Mercury Monterey automobile from an automobile dealership.  Id. at *1.  The dealership they went to did not have the precise car they wanted, so that dealership obtained the automobile through a swap with a second dealership.  Id.  Plaintiffs owned the automobile for approximately three years when one night, it caught fire and damaged the plaintiffs' property.  Id.  Plaintiffs brought various causes of action against the dealerships and Ford Motor Company, the manufacturer of the automobile.  Id. at *2. It was determined that the fire was caused in an area of aftermarket wiring connected to the automobile's engine cooling fan resistor.  Id.  Much of the opinion deals with whether the

plaintiffs could establish who installed the aftermarket wiring. One paragraph in the opinion, however, does discuss whether the change was foreseeable to the manufacture. The court found that the record indicated that authorized dealerships do not use aftermarket parts. Therefore, it was unforeseeable to Ford that such a change would be made to the vehicle. Id. at *5. We are not convinced that this reasoning applies to the instant case. No issue has been raised in this case as to who installed the aftermarket wiring or whether the defendant would have foreseen one of its authorized dealers installing aftermarket wiring. Id.

Generally, the cases cited by the defendant are different from the case at issue. Most of them deal with safety features that the purchaser altered. With less effective safety features, the products injured individuals. In the instant case, temporary repairs were made to a school bus. Repairs that were necessitated by the failure of the original craftsmanship on the bus. We find that the issue substantial change and foreseeability is best left to the jury to determine.[7]

Defendant also argues that it "could not reasonably have foreseen that the owner of a bus <u>who had already ordered a replacement part</u> would,

---

[7]We note that since the defendant filed its brief, the <u>Reese</u> opinion was affirmed in part, and reversed and remanded in part by the Third Circuit Court of Appeals. The Third Circuit, however, did not address the strict liability foreseeability issue relevant to our case. <u>See</u> <u>Reese v. Ford Motor Co.</u>, Nos. 11-3978, 11-3979, 2012 WL 4465670 (3d Cir. Sept. 28, 2012).

inexplicably, attempt a major repair using an aftermarket part before the replacement part was delivered." (Doc. 58, Def.'s Br. at 13) (emphasis in the original). Whereas, plaintiff argues that, "this bus was brand new, with only approximately 5,000 miles on it. To expect that a consumer would remove a bus from service awaiting warranty repair at such low mileage and in the middle of the school day is illogical. A reasonable manufacturer would expect that the insufficient slack in the connecting cables could be discovered by the mechanic and that repairs of such condition would be attempted in the course of the typical business day."[8] (Doc. 63, Pl.'s Br. at 10). In these passages, the parties are clearly arguing the facts. Such argument indicates that genuine issues of material fact are indeed at issue. Because genuine issues of material fact are at issue, summary judgment is inappropriate.

### B. Causation

Next, defendant argues that summary judgment should be granted as to all of plaintiff's claims because plaintiff has failed to present any facts to demonstrate that the product at issue caused plaintiff's injuries. Plaintiff avers that she suffered neck and shoulder injuries because of the instant incident. She asserts that she suffered the injuries by pulling on the steering wheel after the steering wheel became completely locked after the

_____

[8]Defendant suggests that plaintiff's arguments are "idiosyncratic musings." (Doc. 65, Def.'s Reply Br. at 12). We find it is best for the jury to consider such matters as they are questions of fact.

18

engine shut down. Defendant claims that the uncontroverted record establishes that the failure of the wire at issue would not have caused the steering wheel in the bus to become completely locked. As the alleged defect could not have made the steering wheel freeze up, then the injury due to the frozen steering wheel cannot have caused the injury. We disagree with the defendant and find that causation is a question of fact for the jury to determine.

At her deposition, the plaintiff indicated that the steering wheel locked up and would not move. (Doc. 57-9, Pl. Dep. at 155). She further stated that she had to pull the steering wheel "really hard." (Doc. 57-5, Pl. Ans. to Interrogatories ¶ 3). She testified that the steering wheel was completely locked it had no play and would not even move an inch. (Doc. 57-9, Pl. Dep. at 192-93). "It's like you could yank on it and yank on it, but it was - - there was no play in it." (Id. at 193).

Defendant's expert witness, however, indicates:

> [A]n engine shutdown would not have resulted in a loss of steering. Although power assist to the steering system would not be available, the operator of the bus would still be able to manually steer the bus with minimal effort and bring it safely to a stop on the side of the road. Thus, [plaintiff's] claim that there was 'no steering whatsoever' and the 'steering was completely locked' cannot be correct.

(Doc. 57-4, Decl. of Dennis Rostenbach, ¶ 17). Defendant argues that because the steering could not have locked up the way the plaintiff

19

described, then judgment should be entered in its favor.  We disagree.

The plaintiff has presented her version of the manner in which the accident happened, and her perception as to the steering wheel.  The defendant disagrees, although, admitting that the power steering would not be working.  It is for the jury to determine exactly what transpired.  The jury may decide to completely credit plaintiff's testimony or to believe defendant's expert.   Or the jury may conclude that the truth lies somewhere between the complete shutdown described by the plaintiff and the defendant's position that "minimal effort" would be necessary to steer the bus without power steering.  Accordingly, as this question of fact exists, summary judgment is inappropriate.

## C. Collateral estoppel

Plaintiff's complaint avers that she "sustained serious injury and damage, including, but not limited to herniated discs in her neck with radiculopathy into her left arm, as well as various other injuries all of which may be permanent in nature."  (Doc. 1, Compl. ¶ 15).   Plaintiff states in her current brief that she "intends to limit her evidence of injuries to left shoulder and neck injuries."  (Doc. 63, Pl.'s Br. at 13 n.3).

Because plaintiff's injury occurred on the job, she filed for worker's compensation benefits asserting that the incident caused  left shoulder strain, and she evidently received compensation benefits.  On January 8, 2010, her employer filed a Petition to Terminate Compensation Benefits as

of October 23, 2009.  (Doc. 57-13, Def. Ex. L, WCJ Decision at 4).  Rather than concur in the termination, Plaintiff Gonzalez sought to expand the description of her injury pursuant to a Petition to Review Compensation Benefits.  (Id.)  It appears that up to that time, the injury that plaintiff suffered and which was subject to the Workers' Compensation claim was a left shoulder sprain.  (Id.)   She sought to expand the description of the injury she suffered in the incident to include a herniated disc at C3-4 and a bulging disc at C5-6, along with associated radiculopathy.  The WCJ granted the plaintiff's petition with regard to expanding the description of her injury, and denied the defendants' petition to terminate compensation benefits.  (Id. at 7).

The employer appealed that decision to the Workers' Compensation Appeal Board ("WCAB" or "Appeal Board").  The Appeal Board concluded the the WCJ had relied on incompetent medical testimony.  It thus vacated the WCJ's denial of the Termination Petition and remanded the matter for a new credibility determination and to determine whether defendant had met its burden of establishing that plaintiff has fully recovered from her work related injury.  (Doc. 57-14, Def. Ex. M, WCAB Decision at 13).

Defendant contends that the Worker's Compensation case has determined which injuries if any were caused by incident at issue.  Thus, plaintiff is collaterally estopped from relitigating the issue in this case.  After a careful review, we generally agree, but find it is too early to make a

determination as to the findings in the Worker's Compensation case.

The parties agree for the doctrine of collateral estoppel to apply, the following four elements must be present:

> (1) An issue decided in a prior action is identical to one presented in a later action;
> (2) The prior action resulted in a final judgment on the merits;
> (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and
> (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

Frederick v. Action Tire Co., 744 A.2d 762, 766 (Pa. Super. Ct. 1999).

We agree with defendant that decisions of the Worker's Compensation Appeal Board may preclude relitigation of the same issue, that is the causation of plaintiff's injuries. See, e.g., id. (holding that the WCAB's decision that an employee's motor vehicle accident did not cause his injuries precluded a subsequent tort action on the same issue). Plaintiff does not appear to contest this general law. She, however, argues that judgment in the Worker's Compensation case is not yet final. Thus, it is inappropriate to determine the issue of causation at this point. We agree with the plaintiff. In the present case it is unclear on the record before the court, which injuries, if any, the Appeals Board has indicated were not caused by the accident. The Board remanded the case to the WCJ to make further credibility determination to determine if plaintiff had recovered from her work related injury, that is, the left shoulder sprain. (Doc. 57-14,

Def. Ex. M, WCAB Decision at 13).

In light of the remand in the Worker's Compensation case, and the fact that a hearing was held on August 14, 2012, we find it would premature to rule on the issue of which causation issues are precluded. We expect, however, that once the parties have the results of the August hearing, they will be able to agree regarding which injuries were caused by the incident and which plaintiff is prevented from pursuing based upon collateral estoppel.

**Conclusion**

For the reasons set forth above, we find that genuine issues of material fact exist making it inappropriate to grant summary judgment to the defendant. Judgment will be granted, however, with regard to the issues that plaintiff does not dispute, that is, Count V – Fraud, Concealment and Misrepresentation; and the "failure to warn" portion of Count III – Strict Liability.

The remaining issues in this case will thus be: Count I, Negligence and Gross Negligence; Count III, Strict Liability (Design Defect and Manufacturing Defect); and Count VII, Loss of Consortium on behalf of Jason Gonzalez. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELLE GONZALEZ and** | : | **No. 3:09cv2271** |
| **JASON GONZALEZ,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS BUILT BUSES, INC.,** | : | |
| **Defendant** | : | |

## ORDER

**AND NOW**, to wit, this 21st day of March 2013, the defendant's motion for summary judgment (Doc. 57) is **GRANTED** as unopposed with regard to Count V - Fraud, Concealment and Misrepresentation and with regard to the "failure to warn" section of Count III-Strict Liability. It is **DENIED** in all other respects. The remaining issues in this case are thus: Count I, Negligence and Gross Negligence; Count III, Strict Liability (Design Defect and Manufacturing Defect); and Count VII, Loss of Consortium on behalf of Jason Gonzalez.

**BY THE COURT:**

**s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court**